Jobe L. WHALEY and Mamie O. Whaley, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. WC87–76–S.

United States District Court, N.D. Mississippi, W.D.

July 24, 1987.

James D. Waide, Estes & Waide, Tupelo, Miss., for plaintiffs.

Robert Q. Whitwell, U.S. Atty., William M. Dye, Jr., Asst. U.S. Atty., Oxford, Miss., for defendant.

## OPINION GRANTING LEAVE TO APPEAL

SENTER, Chief Judge.

This cause comes before the court on the United States of America's motion for leave to appeal the order of the bankruptcy court entered April 17, 1987. For the reasons discussed below, the court grants the motion as well taken. The court has previously granted a motion by the United States to retain jurisdiction over the adversary complaint in this court. The court finds that the cause should be held in abeyance pending a hearing on the interlocutory appeal.

### Facts

The debtor in this cause filed a petition for relief and plan of reorganization under Chapter 12 of the Bankruptcy Act on February 9, 1987. The petition lists debts of $4,879,473.62 including $4,031,638.97 in loans from the Farmers Home Administration (FmHA). With the petition and plan of reorganization, the debtor filed a complaint against FmHA alleging that the contract was void on several grounds.[1]

The United States moved to dismiss the petition on grounds that the debtors failed to meet the jurisdictional prerequisites of 11 U.S.C. § 101(17)(A). The bankruptcy court found that it had jurisdiction to determine its own jurisdiction. The bankruptcy court further found that this would require that the court hear the adversary complaint to determine whether the debtor would meet the jurisdictional amount. The court issued an order denying the motion to dismiss. The United States now seeks leave

1. The complaint alleges (1) that the Soviet grain embargo was an act by which the United States frustrated the ability of the debtor to comply with the debt contract; (2) that the adoption of cash flow requirements in operating loans after the debtor had entered the program was a breach of the express terms of the contract; (3) that the FmHA violated the debtor's due process rights by failing to inform him of certain interest deferment programs; and (4) that the FmHA was negligent in extending the debtor's indebtedness beyond the debtor's ability to pay.

to appeal that order under 28 U.S.C. § 158 (1984).

## Conclusions of Law

Under 28 U.S.C. § 158(a), the district court is granted jurisdiction to hear "appeals from final judgments, orders, and decrees, and with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." These appeals "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts...." 28 U.S.C. § 158(c) (1984).

■ A denied motion to dismiss is not a final order entitled to appeal as of right. *See Louisiana Ice Cream Distributors, Inc. v. Carvel Corp.*, 821 F.2d 1031 (5th Cir.1987). Any appeal of a denial of a motion to dismiss is interlocutory in nature and subject to the discretion of the court. Which court is to certify leave to appeal and the standards to be applied in determining whether to grant leave to appeal are not readily determinable from 28 U.S.C. § 158.

### (1) 28 U.S.C. § 1292(b) should be applied by analogy.

Because 28 U.S.C. § 158(c) states that appeals from bankruptcy courts are to be "taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts," several courts have ruled that the standards for granting leave to appeal should be § 1292(b) as applied by the circuit courts. *See In re Bertoli*, 812 F.2d 136, 139 (3rd Cir.1987); *In re Southern Industrial Banking Corp.*, 70 B.R. 196, 200–01 (E.D.Tenn.1986); *In re Huff*, 61 B.R. 678, 682 (N.D.Ill.1986); *In re Hunt International Resources Corp.*, 57 B.R. 371, 372 (N.D.Tex.1985); *In re Manville Forest Products Corp.*, 47 B.R. 955, 957 (S.D.N.Y. 1985). However, the analogy is not perfect, as there is no requirement of certification by the bankruptcy court. *See In re Bertoli*, 812 F.2d at 139–40, *First Ameri-can Bank of N.Y. v. Century Glove, Inc.*, 64 B.R. 958, 962 (D.Del.1986); *In re Huff*, 61 B.R. at 682 & n. 6.

Interlocutory appeals interfere with the primary goal of the bankruptcy system—the expeditious resolution of pressing economic difficulties. *Katchen v. Lundy*, 382 U.S. 323, 328, 86 S.Ct. 467, 471, 15 L.Ed.2d 391 (1966); *In re Durensky*, 519 F.2d 1024, 1028 (5th Cir.1975). Consequently, interlocutory appeals should be permitted only when extraordinary circumstances justify the granting of the appeal. *In re Durensky*, 519 F.2d at 1028. Such circumstances are present in this case.

### (2) The issue under consideration meets the requirements of § 1292(b).

■ 28 U.S.C. § 1292(b) places three conditions on the granting of leave to appeal. (1) The issue must involve a controlling issue of law. (2) There must be substantial ground for difference of opinion on that issue of law. (3) An immediate appeal from the order must have prospects of materially advancing the ultimate termination of the litigation. All are present in the cause *sub judice*.

### (a) The controlling issue is one of law.

The motion to dismiss was premised on the argument that a petition in bankruptcy under Chapter 12 must state on its face an aggregate debt of less than $1.5 million. Here, the petition stated an aggregate debt in excess of $4.8 million and was accompanied by a complaint challenging $4.0 million of that debt. The controlling issue is clearly one of *law*.

### (b) There is substantial ground for difference of opinion as to that issue of law.

The bankruptcy court in this cause held that the validity of the debt must be examined before applying the $1.5 million test. The United States contests this, stating that the test is jurisdictional. The situation in this case is unusual. Only three claims contesting the amount of debt for jurisdiction under 11 U.S.C. § 101(17)(A) have been heard. *See In re Johnson*, 73 B.R. 107 (S.D.Ohio, 1987); *In re Labig*, 74 B.R. 507 (S.D.Ohio, 1987); *In re Orr*, 71 B.R. 639

(E.D.N.C.1987). In *Johnson,* husband and wife, joint debtors with $1.6 million in debts, filed separate bankruptcies under Chapter 12, each claiming $800,000 of the debt. The court decided that the couple was ineligible for Chapter 12 because (1) the entire focus of the act was on the "Family Farm," and (2) there was no explicit language in the legislative history to permit debt splitting to meet the jurisdictional limit. The court also reasoned by analogy to Chapter 13, citing *In re Cronkleton,* 18 B.R. 792 (Bank.S.D.Ohio 1982). *Cronkleton* had invalidated an attempt to meet the debt limitations of 11 U.S.C. § 109(e) by similar debt splitting.

In *Labig,* the debtors substantially understated their debts, and the court held that the amounts listed on the debtors' petition merely created a rebuttable presumption which the creditors had successfully rebutted. Most of the understatement occurred where the debtors listed what they believed the fair valuation of a debt was with the notation "disputed." These amounts often differed greatly from what was listed on the creditors books. The court stated "clearly a debtor may not shoehorn himself into Chapter 12 or Chapter 13 merely by listing debts as 'disputed'." *Labig,* citing *Craig Corp. v. Albano,* 55 B.R. 363 (D.N.D.Ill.1985). The total debt in *Labig* was approximately $2.0 million. The court stated that Congress had placed "stringent guidelines" in its definition of a family farm with clear recognition that many family farms would not meet the statutory definition of "Family Farm." *Orr* involved a similar understatement which was corrected upon the creditor's protest. The debtors in *Orr* were denied relief under Chapter 12 on debts of $1.6 million. None of these cases involved a petition facially in excess of the jurisdictional limit. In each of these cases, the court treated the initial petition as a rebuttable presumption.

Chapter 12 is a modification of Chapter 13. H.Rep. No. 958, 99th Cong., 2d Sess. 48 (1986) (reprinted at 1986 *U.S.Code Cong. & Admin.News* 5227, 5249). Like Chapter 13, Chapter 12 is limited to debtors with relatively small amounts of debt.

Consequently, cases under Chapter 13 *may* serve as precedent for cases under Chapter 12. A debtor is allowed to challenge the characterization of his debts to remain within the jurisdictional amount under Chapter 13. *See, e.g., In re Ballard,* 4 B.R. 271 (Bankr.E.D.Va.1980).

An argument for extremely strict application of threshold tests in the bankruptcy code has been made with regard to the 80 percent of gross income test under § 101(17)(A) in the context of a farmer's exemption from involuntary bankruptcy. *See In re Wagner,* 808 F.2d 542 (7th Cir. 1986). The argument in *Wagner* was that Congress had substantially modified the test of whether a person was a farmer under § 101(19) from a complex activity based test to a simple, mechanical income based test with an arbitrary cut-off point. *Id.* at 546–547. The Seventh Circuit found that the arbitrary income test was inherently over and under inclusive, and that Congress intended this arbitrariness. Because the court could not remedy the inclusiveness problem by modifying taxable income, the court held it should choose the simplest approach to avoid uncertainty in the threshold determination of exemption. The logic of *Wagner* may also apply to the Chapter 12 debt threshold. The debts to be tested are extensively described in § 109(e) —"noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000." By contrast, the gross debt requirement in § 101(17)(A) is simple— "aggregate debts do not exceed $1,500,-000." But the description of farm debts is complex. "Not less than 80% of whose aggregate noncontingent liquidated debts ... on the date the case is filed, arise out of a farming operation owned and operated by such individual." An argument parallel to *Wagner* can therefore be made—that the threshold is simply described and should be simply applied; and that Congress's intent is clear on this because of the simple language used to describe the debt threshold in § 101(17)(A) as contrasted with the specificity of § 109(e). Clearly, there is "substantial ground for difference

of opinion" as to whether the adversary complaint can be considered in determining whether jurisdiction exists.

**(c) Appeal may materially advance the ultimate termination of the litigation.**

The adversary complaint alleges several theories—constitutional, tort, and contract—on which the debt can be invalidated. Extensive discovery will be necessary. Jury trial has been demanded. Disposition of the case on a motion to dismiss would "materially advance the ultimate termination of the litigation."

An appropriate order shall issue.