In re R. Scott CARPENTER, Carolyn J. Carpenter, Debtors.

Bankruptcy No. 2–87–02013.

United States Bankruptcy Court, S.D. Ohio, E.D.

Oct. 1, 1987.

Grady L. Pettigrew, Jr., Arter & Hadden, Columbus, Ohio, for debtors.

William B. Logan, Jr., Luper Wolinetz Sheriff & Neidenthal, Columbus, Ohio, for The Federal Land Bank.

Frank M. Pees, Worthington, Ohio, Trustee.

### FINDINGS, CONCLUSIONS AND ORDER ON MOTION TO DISMISS CHAPTER 12 CASE

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court upon a motion filed on behalf of The Federal Land Bank ("FLB"), seeking dismissal of the Chapter 12 case of debtors R. Scott and Carolyn J. Carpenter. The motion was op-

posed by the debtors and was heard by the Court.

FLB contends that the debtors are ineligible for relief under Chapter 12 of the Bankruptcy Code because they are not "family farmers" as required by 11 U.S.C. § 109(f). That assertion arises from FLB's contention that the aggregate debts of the debtors exceed the $1,500,000 limitation imposed upon their right to relief under Chapter 12 by 11 U.S.C. § 101(17). Central to that determination is the characterization of the debtors' relationship with Commodity Credit Corporation ("CCC"). Exclusive of any obligations to CCC, the schedules filed by the debtors indicate debts of approximately $1,480,783, and the debtors concede that if their relationship with CCC is that of debtor and creditor, their aggregate debts exceed the statutory limit.

The issue with regard to the relationship created by the existing agreements between the debtors and CCC is whether such arrangements created loans for which CCC took security interests in certain of the debtors' crops or whether the debtors sold their crops to CCC, received proceeds for such sales, and retained an option exercisable on a "maturity date" to repurchase the crops and benefit from any increase in the market prices of the commodities. The debtors alternatively assert that the characterization of these agreements as executory contracts and the contingent and unliquidated nature of the obligations arising therefrom impact upon the inclusion of the obligations in the statutory debt limitation.

### FINDINGS OF FACT

The facts in this matter are basically undisputed and are found by the Court as follows.

The debtors and CCC are parties to a number of agreements which were not listed as debts in the debtors' bankruptcy schedules.

Those agreements include:
1. Two (2) Farm Storage Notes and Security Agreements ("Farm Storage Notes").
   Loan # 252 is documented by a note and a security agreement in favor of CCC against 13,590 bushels of the debtors' 1986 soy bean crop, granted to secure repayment on the note's maturity date of the principal amount of $62,-557.09.
   Loan # 251 grants to CCC a security interest in 57,063 bushels of the debtors' 1986 corn crop to secure repayment on the note's maturity date of loan proceeds in the principal amount of $105,942.02. Both crops are stored on the debtors' or nearby farms.
2. Two (2) Warehouse Storage Notes and Security Agreements ("Warehouse Storage Notes").
   Loan # 87 represents the transfer from farm storage to warehouse storage of 3,916 bushels of corn formerly included in Loan # 251. The other such agreement, Loan # 72, involves the warehouse storage of $2,981.51 bushels of 1986 corn in the principal amount of $5,520.20. It is not known if Loan # 72 also represents a transfer of corn previously included in Loan # 251.
3. Three (3) Farm Storage Grain Reserve Agreements. ("Reserve Agreements").
   These agreements relate to commodities harvested prior to 1986 which were the subject of previous loans. Pursuant to the agreements, the debtors, as producers, agreed to store and hold certain commodities off the market for an extended period in exchange for an extension by CCC of the maturity dates of the related loans. The debtors also receive small compensation for their continued storage of these commodities. The three agreements at issue, Loans # 193, # 73A, and # 42, are for 80,479 bushels of 1984 and 1985 corn for which loan proceeds were disbursed in the approximate amount of $207,636.

Although some portion of the 1986 corn commodity has been transferred from farm storage to warehouse storage, none of the loan proceeds have been repaid, by cash or tender of negotiable certificates, and none of the commodities have been surrendered

to CCC in satisfaction of the loan proceeds. UCC–1 financing statements were filed with the appropriate County Recorder's office for the commodities stored on the debtors' or nearby farms. The negotiable warehouse receipts are pledged to secure repayment of the loan amounts represented by the corn stored in warehouses.

## ISSUES OF LAW

The legal issues to be determined are as follows:

1. Do the agreements between the debtors and CCC create "debts"?

2. If such agreements create a debtor-creditor relationship, are the resulting debts contingent or unliquidated?

3. If the resulting debts are contingent and/or unliquidated, does that characterization remove those obligations from the threshhold eligibility requirement for Chapter 12?

4. If the obligations are executory contracts, does that characterization impact upon their inclusion in the debt limitation for Chapter 12 eligibility?

## CONCLUSIONS OF LAW

■ The Court finds that the agreements between the debtors and CCC create debtor-creditor relationships, the amounts of which must be counted in the debtors' eligibility for Chapter 12. *In re Stedman*, 72 B.R. 49 (Bankr.D.N.D.1987.)

The documents introduced into evidence at trial and the testimony of all witnesses except Mr. Carpenter clearly show that the debtors continue to own the farm commodities they produced in which CCC has taken a security interest to secure the repayment of funds advanced as loans. Although such finding is a closer call for the commodities involved in the Reserve Agreements because of the significant penalties for pre-payment or release of those commodities when the market price is below the designated release level, it is clear that only the debtor/producers can determine when and how such commodities are sold or forfeited to CCC. In this Court's opinion, that right may be determinative of ownership unless economic reality leaves

no real choice. Without deciding the economic reality issue, however, and even without including the obligations for the Reserve Agreements, the outstanding obligations for the 1986 Farm Storage Notes and the Warehouse Storage Notes are sufficient to cause these debtors' debts to exceed $1,500,000.

■ The Court also finds that the debts created by these agreements are not contingent. Contingent debts have been said to be "claims which depend either as to their existence or their amount on some future event which may not occur at all or may not occur until some uncertain time." *In re Blehm*, 33 B.R. 678 at 679 (Bankr.D. Colo.1983.) There is no question that the loan proceeds received from CCC by these debtors must be repaid on a date certain, which date may be extended upon certain terms. Whether that repayment is accomplished by a forfeiture of the debtors' assets against which CCC has a lien or whether the debtors make the repayment from proceeds of the sale of the collateral, the minimum amount which must be repaid or the deemed value which must be surrendered is definite and certain and does not depend upon any future event for its existence. Subsequent events may increase that obligation by shortage in the commodity amounts or by the imposition of interest, but repayment of the face amount of the loans by a method acceptable under the agreements is not "contingent" as that term is normally understood.

■ The Court finds further that, although the exact amount required to be repaid by the loan agreements is uncertain because of the credit given for interest if the commodities are forfeited, the minimum to be repaid is certain. Accordingly, "unliquidated" could be applied only to the interest amount. Despite the debtors' oral contention that amounts owed to them by CCC by virtue of "set-aside" agreements could be offset against their obligations to CCC, no evidence of those agreements, the amounts due thereunder, the appropriateness of offset or the impact of any offset upon the existence of the debts to CCC has

been presented to the Court. On the basis of the evidence before it, the Court finds that the debtors' obligations to CCC as a result of the Farm Storage Notes and the Warehouse Storage Notes are not unliquidated to any legally significant extent.

If the Court is incorrect in its finding that certain of the agreements between the debtors and CCC are noncontingent and/or liquidated, the issue for decision then becomes whether that characterization makes a difference. By its terms, 11 U.S.C. § 109(f) makes relief under Chapter 12 available only to "family farmers." Family farmers include an "individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $1,500,000 ..." 11 U.S.C. § 101(17). No requirement that those debts be noncontingent or liquidated appears in that portion of the statutory definition of a family farmer, and those qualifiers expressly apply only to the portion of the definition which relates to the source of the debts. It is undisputed that the debtors are engaged in a farming operation and that the overwhelming majority of their debts arise from that operation. Therefore, the focus of inquiry is on the amount of the "aggregate debts."

■■■ A "debt", defined by 11 U.S.C. § 101(11), "means liability on a claim." Although "claim" is broadly defined in 11 U.S.C. § 101(4) to include contingent and unliquidated rights to payment, this Court agrees with the Bankruptcy Court in Utah in its belief that "claim" has a broader meaning than "debt." *In re Lambert*, 43 B.R. 913 (Bankr.D.Utah 1984). A claim, arising from a creditor's demand for repayment, encompasses all obligations against a debtor which may be assertable in a bankruptcy case and thereby potentially affected by the discharge. But a claim is subject to disallowance if it is not a liability cognizable under law. That liability must be established or unchallenged before a claim becomes a debt. For that reason, the debtor's good faith indication of its debts generally establishes its eligibility for relief under a specific chapter of the Bankruptcy Code rather than the assertions of creditors by way of claims. See *Comprehensive Accounting Corp. v. Pearson (In the Matter of Pearson)*, 773 F.2d 751 (6th Cir.1985). This Court would add to the finding in *Pearson* that the omission of a debt by the debtors, even if such omission is not in bad faith, but results from a mistake in law, is properly before the Court for the purpose of establishing eligibility for relief upon an appropriate challenge by a party in interest.

■■■ Despite the absence of noncontingent and unliquidated as qualifiers of the definition of aggregate debts, because of the definition of debts, the debtors' obligations to CCC may be excluded from the eligibility total if liability does not exist or the Court, in early and perhaps abbreviated hearings, estimates the obligations in a sufficiently low amount. In this case, the debtors' debts to CCC properly are included in the eligibility threshold because, even if contingent or unliquidated to the extent of the interest obligation, such obligations are established as debts to a legally sufficient extent.

■■■ Finally, the debtors assert that the nature of these debts as executory contracts removes them from inclusion in the eligibility requirement. This argument was joined with an assertion that characterizing the obligations as debts includable in the limitation somehow acted as a rejection of those contracts in a manner which had adverse economic impact upon the debtors.

The Court finds that the impact of the agreements must be determined as of the date of the filing of the bankruptcy petition. 11 U.S.C. § 109(e); see also *Pearson*, 773 F.2d at 758. At the time this case was filed, the debtors had debts to CCC arising from these agreements. Nothing has happened to this date to change that result. As a practical matter, the only financial distinction between rejection and assumption of these contracts may be exposure for any decrease in the quantity and quality of the grain between the onset of the loans and the date of rejection. But merely the fact that, as of the date of the bankruptcy filing; the agreements have executory aspects which might arguably make them

executory contracts, does not, without more, remove the resulting obligations from inclusion in the eligiblity determination.

Based upon the foregoing, the Court finds that the debtors have debts in excess of the $1,500,000 threshhold set by Congress for eligibility to file for relief as a family farmer under Chapter 12 of the Bankruptcy Code. That ceiling may well be too low, and these debtors appear to be family farmers as that term is generally understood. Such determination, however, is not within the power of this Court to make. Accordingly, the motion to dismiss filed by FLB shall be, and the same is, hereby SUSTAINED.

The Court will grant the debtors twenty (20) days to take whatever other action may be appropriate in this case. If no such action is taken, FLB may present an order of dismissal after the expiration of that period. Any dismissal entered pursuant to this opinion and order will be without prejudice to the refiling of a Chapter 12 case at a time when the debtors' debt level is within the statutory limit or to the filing of a case under another chapter of the Bankruptcy Code at a later date.

IT IS SO ORDERED.