**In re Noel and Reta VAUGHAN, Debtors.**

**Bankruptcy No. BK 88–41045.**

United States Bankruptcy Court, S.D. Illinois.

May 22, 1989.

Terry Sharp, Mount Vernon, Ill., for Farm Credit Bank of St. Louis.

## MEMORANDUM AND ORDER

KENNETH J. MEYERS, Bankruptcy Judge.

This matter is before the Court on motion of Farm Credit Bank of St. Louis to dismiss the Chapter 12 bankruptcy petition of debtors, Noel and Reta Vaughan. In their schedule of assets and liabilities, debtors listed total debts in the amount of $1,580,818.81, including a disputed debt in the amount of $306,985.00 to the Fairfield National Bank. The Farm Credit Bank seeks dismissal of debtors' Chapter 12 petition on the grounds that they are not "family farmers" under 11 U.S.C. section

101(17)(A) because their aggregate debts exceed $1,500,000. At issue is whether the disputed debt to Fairfield National Bank is to be included in determining debtors' compliance with the aggregate debt limitation of section 101(17)(A).

Section 101(17)(A) defines "family farmer," to whom Chapter 12 relief is available (see 11 U.S.C. section 109(f)), as:

> (A) [an] individual or individual and spouse engaged in a farming operation *whose aggregate debts do not exceed $1,500,000* and not less than 80 percent of whose aggregate noncontingent, liquidated debts ... on the date the case is filed, arise out of a farming operation owned or operated by such individual or individual and spouse....

11 U.S.C. section 101(17)(A) (emphasis added). "Debt" is defined under the Code as "liability on a claim" (11 U.S.C. section 101(11)), and "claim" is further defined as:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, *disputed*, undisputed, legal, equitable, secured, or unsecured[.]

11 U.S.C. section 101(4) (emphasis added).

Debtors oppose Farm Credit Bank's motion to dismiss, asserting that the debt to Fairfield National Bank was extinguished when the bank accepted a deed in lieu of foreclosure from debtors but failed to obtain a statement from debtors agreeing to remain liable on the balance of the indebtedness. The stipulated facts show that in December 1987, debtors executed a deed conveying two parcels of real estate to Fairfield National Bank in partial cancellation of their indebtedness to the bank. It was the parties' intent that debtors would continue to be liable for the remaining indebtedness of over $300,000, and debtors made payments on this balance following the deed in lieu of foreclosure. Debtors executed an "affidavit of estoppel" indicat-

ing that the deed was in partial cancellation of the total amount owed to the bank, and the warranty deed further stated that debtors' mortgage indebtedness would be reduced by $55,000 by reason of the deed. Debtors contend, however, that the bank failed to comply with a recently enacted state law provision recognizing deeds in lieu of foreclosure, which states that acceptance of such a deed

> shall relieve from personal liability all persons who may owe payment or the performance of other obligations secured by the mortgage ... *except to the extent a person agrees not to be relieved in an instrument executed contemporaneously.*

Ill.Rev.Stat., 1987, ch. 110, par. 15–1401 (emphasis added).

Farm Credit Bank denies that the debt to Fairfield National Bank was extinguished, arguing that the bank substantially complied with the statute so as to preserve debtors' remaining indebtedness following the deed in lieu of foreclosure. The Court, however, finds it unnecessary to determine the merits of the dispute regarding the Fairfield National Bank debt. Rather, the Court finds that the reference in section 101(17)(A) to "aggregate debts" is sufficiently broad to encompass the disputed debt to Fairfield National Bank so as to require inclusion of this debt in determining debtors' eligibility for Chapter 12 relief.

The "aggregate debt" limitation applicable to Chapter 12 debtors is unique in that it, unlike other debt limitations under the Code, is unqualified and simple. *See Whaley v. U.S.A.*, 76 B.R. 95 (N.D.Miss.1987).[1] Debts to be considered in Chapter 13 filings, for instance, are extensively described as noncontingent, liquidated, and secured or unsecured. *See* 11 U.S.C. section 109(e). Likewise, the provision determining the right of creditors to file a petition for involuntary bankruptcy of a debtor specifies

---

**1.** The *Whaley* court allowed an interlocutory appeal to determine whether the validity of a disputed debt should be established before applying the "aggregate debt" test of section 101(17)(A). The court discussed the arbitrary approach of *In re Wagner*, 808 F.2d 542 (7th

Cir.1986) in applying the "80 percent of gross income" test of section 101(19) and observed that the language of section 101(17)(A) would justify a similarly strict approach regarding the aggregate debt limitation.

that claims against such an individual be "not contingent as to liability or subject to a bona fide dispute." 11 U.S.C. section 303(b). Even the farm debt limitation under section 101(17)(A), by contrast to the aggregate debt limitation that precedes it, applies only to debts that are "noncontingent" and "liquidated." The broad, simple language used to describe the overall debt limitation in section 101(17)(A) makes this provision considerably more restrictive than if the limitation had been $1,500,000 of noncontingent, liquidated or undisputed debts. There is no exception under the statute for disputed debts, and the plain language of the statute indicates that such debts should be considered along with other types of debts in the threshold test of section 101(17)(A) despite their disputed status.

The Court is aware of a contrary view expressed in the Chapter 12 cases of *In re Lands*, 85 B.R. 83 (Bankr.E.D.Ark.1988) and *In re Carpenter*, 79 B.R. 316 (Bankr.S.D.Ohio 1987), in which the courts distinguished between the definitions of "debt" and "claim" to hold that liability on a claim must be established or unchallenged before a claim becomes a debt. The *Lands* and *Carpenter* courts relied on the Chapter 13 case of *In re Lambert*, 43 B.R. 913 (Bankr.D.Utah 1984), which in turn adopted the minority view of a line of Chapter 13 cases that a disputed debt should not be included in determining eligibility for Chapter 13 relief because Congress' use of the term "debt" rather than "claim" indicated that such eligibility was to be predicated upon the debtor's actual obligation to pay under applicable law and not on the mere demands of creditors. *See In re King*, 9 B.R. 376 (Bankr.D.Or.1981). The majority view, as stated by a higher court in repudiating *King* (*In re Sylvester*, 19 B.R. 671 (9th Cir.BAP 1982)), is that since "debt" is essentially synonymous with "claim" under the Code, the fact that a claim is disputed or that it is subject to defenses or counterclaims is irrelevant in the threshold determination of a debtor's eligibility under the appropriate debt limitation. *See In re Pulliam*, 90 B.R. 241 (Bankr.N.D.Tex.1988).

Like the courts adopting the majority view, the Seventh Circuit Court of Appeals has found that Congress intended for the terms "debt" and "claim" to be coextensive. As stated in *In re Energy Cooperative, Inc.*, 832 F.2d 997, 1001 (7th Cir.1987):

> By defining a debt as a "liability on a claim," Congress gave debt the same broad meaning it gave claim.... [W]hen a creditor has a claim against a debtor—even if the claim is unliquidated, unfixed, or contingent—the debtor has incurred a debt to the creditor.

Applying this view in a Chapter 12 case, even disputed debts must be considered in the debt threshold determination of section 101(17)(A), as Congress' unqualified use of the term "debt" and its definition of "debt" in terms of "claim" call for such a broad interpretation of the aggregate debt limitation. *See In re Pulliam; In re Vasu Fabrics, Inc.*, 39 B.R. 513 (Bankr.S.D.N.Y.1984).

There is a sound policy basis for this approach. *See In re Albano*, 55 B.R. 363 (N.D.Ill.1985). Section 109(f) and the accompanying definition of "family farmer" in section 101(17)(A) erect a threshold limitation on persons eligible for filing under Chapter 12. While a claim based on a disputed debt may eventually be disallowed if the debtor has a valid defense against it, it would generate a circular and self-defeating barrier to administration of Chapter 12 proceedings if the bankruptcy court had to pass on the merits of all claims before the proceeding could get under way. To paraphrase the court's statement in *Albano*, no debtor can be permitted to shoehorn himself or herself into Chapter 12 merely by disputing certain debts. *See Albano*, 55 B.R. 363, 368.

Debtors in the instant case assert that rather than constituting a defense to the claim of Fairfield National Bank, the Bank's failure to obtain the requisite statement from debtors served to extinguish the debt by operation of law. Debtors contend that they should not be required to list the debt on their schedules and assert that they could amend their schedules to remove the debt so as to come within the

limits of section 101(17)(A). The Court finds this argument to be without merit. The debt to Fairfield National Bank, although disputed by debtors, cannot be said to be without a valid underlying legal basis such as, to use the example cited by debtors, a debt that has been discharged in a previous bankruptcy proceeding. A distinction may be made between debts for which there is no liability cognizable at law and those which were valid in their inception but which are subject to affirmative defenses, counterclaim, or setoff. *See In re Burgat*, 68 B.R. 408 (Bankr.D.Colo. 1986). The debt to Fairfield National Bank is of the latter type, and while it may be subject to a defense to be determined at trial on the merits, debtors' liability at this preliminary stage renders it a "debt" under the definition of section 101(11).

Inclusion of the disputed debt to Fairfield National Bank listed on debtors' schedules results in aggregate debts in excess of the $1,500,000 limitation of section 101(17)(A). Debtors, therefore, do not qualify as Chapter 12 debtors under section 109(f) of the Code. While this would ordinarily require dismissal, debtors have filed an alternative motion to convert the case to Chapter 11 in the event the Court finds that they are ineligible for Chapter 12 relief.

■ Conversion rather than dismissal of a Chapter 12 case has been allowed based upon the court's finding that the Chapter 12 petition was filed in good faith, creditors will not be prejudiced by the conversion, and conversion will not otherwise be inequitable. *See In re Orr*, 71 B.R. 639 (Bankr. E.D.N.C.1987); *see also Matter of Bird*, 80 B.R. 861 (Bankr.W.D.Mich.1987); *In re Johnson*, 73 B.R. 107 (Bankr.S.D.Ohio 1987); *but see Matter of Roeder Land & Cattle Co.*, 82 B.R. 536 (Bankr.D.Neb. 1988); *In re Christy*, 80 B.R. 361 (Bankr.E. D.Va.1987). In the instant case although debtors filed a petition that was facially in excess of the Chapter 12 debt limit, they listed one of the debts as disputed, arguing that they were relieved of liability under a recently enacted state statute. As discussed above, there is a split of authority as to whether such a disputed debt should be included in determining compliance with the statutory debt limit. Additionally, the statute relied upon by debtors is a departure from common law and has not yet been interpreted by Illinois courts. Debtors' position, therefore, cannot be said to be unreasonable, and it does not appear that debtors filed their petition in bad faith or in total disregard of the statutory limit so as to require dismissal with prejudice. *See Matter of Lawless*, 79 B.R. 850 (W.D. Mo.1987).

If debtors' Chapter 12 case were dismissed without prejudice, they could refile under Chapter 11 without delay, as the exceptions to refiling are not applicable. *See In re Orr;* 11 U.S.C. section 109(g). Nothing would be accomplished by such dismissal and subsequent refiling. Indeed, the change in the petition date which would occur upon refiling would be potentially detrimental to creditors because of the change of date used in computing the preference period. *In re Orr; cf. In re Wenberg*, 94 B.R. 631 (9th Cir.BAP 1988): creditors of Chapter 13 debtor would be harmed by dismissal and refiling of Chapter 11 case rather than conversion due to lapsing of the original preference period. While the Code does not specifically authorize the conversion of a Chapter 12 case to a Chapter 11 case (see 11 U.S.C. section 1208), the Court follows the *Orr* line of cases holding that conversion should be allowed in appropriate cases to prevent manipulation of the bankruptcy process. *See Matter of Bird.* The Court, therefore, will grant debtors' alternative motion for conversion rather than dismissal of their Chapter 12 case.

Farm Credit Bank has additionally filed a motion for sanctions against debtors and their counsel alleging that debtors' Chapter 12 petition was filed in bad faith for the purpose of hindering and delaying a foreclosure action which the Farm Credit Bank was pursuing in state court. The Court has determined that debtors' filing was not in bad faith and finds no basis for the imposition of sanctions. The Court further finds no merit to debtors' own motion for sanctions against Farm Credit Bank. Accordingly, the Court denies both motions.

427

IT IS ORDERED that Farm Credit Bank's motion to dismiss debtors' Chapter 12 case is DENIED and that debtors' alternative motion to convert to a proceeding under Chapter 11 is GRANTED.

IT IS FURTHER ORDERED that debtors' and Farm Credit Bank's motions for sanctions are DENIED.